Case number 24-1768 et al. Luis Jaime Castillo Butters, Appellant, v. National Academy of Sciences, and Marcia McNutt. Mr. Johns for the Appellant, Ms. Brooks and Becker for the Appellate. Good morning, Mr. Johns. Good morning, Judge Pan, Judge Ginsburg. Good morning. May it please the Court. I'm here on behalf of Dr. Luis Jaime Castillo Butters in this appeal. I'd like to reserve a few minutes for rebuttal from my time. This is, we believe, a very straightforward case for this Court to review. And I think the very first and most important aspect is that this is, we are here after a dismissal on Rule 12b-6 for failure to state a claim. And, of course, in this circuit, and as the Supreme Court has stated in Twombly and Iqbal, basically all facts must be taken as true, all reasonable inferences granted to the plaintiff. And this circuit has clarified even further that there must be no set of facts consistent with the allegations that could exist that would allow the plaintiff to state a claim. And so we think that... Can I ask you a question? Yes. Is your position that the defamatory statement is that your client violated Section 4 of the Code of Conduct or that he engaged in sexual harassment? Or both? Well, it's both, Your Honor. And we had three claims. There was defamation, false light, and defamation by implication. I understand. I'm just trying to understand what the defamation is. So the defamation is the violation of the Code of Conduct, Section 4. Okay. So stating that he violated the Code of Conduct to you is defamatory? Such that it resulted in his expulsion from the National Academy of Sciences. Yes. So Section 4 has a whole long list of different things. Some of it is very serious, such as sexual harassment, discrimination, bullying, and then some of them is not, like, not being collegial. And so I guess the question is whether that can be considered defamatory in the sense that it's odious if it has a whole long list of things, some of which isn't odious. Well, Your Honor, I would offer that, especially given the prestige of an appointment to the National Academy of Sciences and being an international member, which in and of itself was an additional prestigious appointment to commit to that. Is that part of the analysis about whether or not that statement is odious? The fact that it was a prestigious appointment, does that actually matter in terms of us trying to decide if saying somebody violated Code of Conduct Number 4 is defamatory? Well, I think it goes to the issue of defamatory. For instance, if one was ejected from the local Rotary Club for not being collegial versus being ejected from the National Academy of Sciences. Well, it would be very important to the person who was ejected from the Rotary Club. Maybe not to your client, but I don't see what the difference is. Well, it goes to reputation, Your Honor, the damage to reputation. And this is damage to reputation at such a higher level, such a greater level of magnitude that the statement that Dr. Castillo was ejected for violating the Code of Conduct, even if there was no description of the Code of Conduct, I think would be enough to state a claim for defamation because it's saying you can't belong to this organization anymore because of something you did. And our argument is that that is provably false. If we're creating law or interpreting law that defines defamation, I don't see how it's workable to include in the definition of defamation the level of prestige that this person, this plaintiff has, or the level of prestige of the things that are at stake, in my view, I don't think, should influence the definition of what is defamatory in the sense that it's odious. I just I'm not sure how that would work in writing an opinion that defines defamation. Well, certainly, Your Honor, it would go to potentially it goes to remedy and to damages, but I think that I'm trying to focus in on whether, as a matter of law, saying you violated Section 4, which includes not being collegial, right? But that level, does that rise to odious and ridiculous that the type of standard that can, as a matter of law, be defamatory? It does, Your Honor, because Section 4 includes all those other conditions as well. There's no clarification that said Dr. Castillo was ejected for violating Section 4 of the Code of Conduct because he wasn't collegial. And again, in the totality of the circumstances, we know the same day that that clarification statement was issued. The defendants Ms. McNutt's statements in Science Insider appear, which goes toward, which also contributes to our defamation by implication claim that couples the ejections with other sexual harassment cases. And so I think that it, it's not enough to simply say, well, there are some, there are some mild charges included in Section 4 of the Code of Conduct. I'm just saying here because the person who hears the standard, the legal standard is it must make the plaintiff appear odious, infamous, or ridiculous. It must, and saying you violated Section 4, does that necessarily make you appear odious, infamous, or ridiculous when you could have just been not collegial? Well, I think it's also a reasonable inference, Your Honor, that what the NAS is talking about is the serious elements of Section 4, which includes sexual harassment. I believe that's a very reasonable inference. It's a reasonable inference, but it must make the plaintiff appear odious and particular, not being ejected, the defamatory statement. Which is you've been removed because of Section 4. I'm not sure it meets that standard. Well, Your Honor, I believe that because Section 4 includes sexual harassment and some other, and bullying, some other. But it's not must. That's my question. Well, I, again, I believe that we're entitled to that reasonable inference. And I think that, again, I stand on the position that being ejected from, being so non-collegial as to be ejected from the National Academy of Sciences, I think is odious and subject to ridicule. And so I think that the defamation spans all of those annotated conduct points in Section 4. So, on the article, it seems to me, I'm wondering, it seems to me that the most serious charges or allegations against your client were made not by Ms. McNutt, but by the rest of the article, which was somebody else speaking. And it's just not clear to me that what Ms. McNutt said. Well, it's the standard of defamation by implication. Yes, Your Honor, and this case is not identical, but similar to the Fels versus the SEIU case. When the article speaks about 3 other NAS members being ejected for sexual harassment, the quote from Ms. McNutt then says, the removals show. That you must be held to a higher standard to be a role model, and I'm paraphrasing that section. So, the legal standard is, it's not enough that a statement can be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses that inference. That's from Fels. Yes, and we think that this situation is, while not identical, it's directly on point. That this quote, it's a very reasonable inference that NAS and Ms. McNutt have cooperated in the production, in the writing of this article. And it's very clear from the positioning of that comment that she and NAS are endorsing the statement made by the journalist that these 3 individuals were ejected because of sexual, for committing sexual harassment. Did you allege anything about Ms. McNutt's knowledge of what the article would say? So, we do allege that she participated in the construction or production of the article. We did also plead. What does that mean besides making her quotation available? That she participated with the reporter in structuring this, in this statement, in this article. In other words, that she knew that this was the gist, this was the point of the article. Where is that in the complaint? So, that is in the second amended complaint. Thank you. This is joint. Joint appendix 78. It's page 6. And this is. Joint appendix page what? Joint appendix page 78, your honor. Page 6 of the second amended complaint. And paragraphs 32 to 37. Well, actually all the way through 43 discuss the participation in the drafting of the article. So, paragraph 33 says McNutt encouraged and fueled the production of the article. By providing the statements quoted in the article. So, all it is, is her statement in the article, basically. And then, neither McNutt nor Nass in paragraph 36 asked for a retraction correction or clarification. That's correct, your honor. And that's something that, if there was a misunderstanding or a misconstrual, clearly that would have taken place. But there was no retraction. There never has been a retraction. So, it seems that McNutt's statements and the NAS's statements have been careful not to state or suggest that your client engaged in sexual harassment. They're really, they've never, ever made that connection to sexual harassment. And it just seems that what she said doesn't suggest that he engaged in sexual harassment. It's just the context that it was in this article. But can we hold her responsible for what the writer of the article said in the rest of the article? I don't think we can. Well, again, your honor, there's been, there was no, there was no attempt for a retraction or clarification at any time. I think that, again, a reasonable reader of that statement would see that as NAS signing up and being on board with the statement that these individuals were kicked out because they had committed sexual harassment. But isn't the standard that her statement must affirmatively suggest that she intended or endorsed the inference? And I don't think her statement meets that standard. So, I'll note that D.C. law requires an especially rigorous showing for defamation by implication claims. So, how does this meet the standard? Well, I think the statement, the removals, as part of Ms. McSnutt's statement, is referring back to two paragraphs earlier in the statement where the author indicates that those three members were ejected specifically for sexual harassment. But her statement doesn't indicate that. She just gave a quote to the writer. She doesn't know where in the article he's going to put her quote, does she? No, but I think it's a reasonable inference that she engaged in additional colloquy with the reporter to get this information. There's no other information or indication where the reporter got any of this information otherwise other than from Ms. McSnutt. And again, on 12b-6, that's a reasonable inference. There might be other sources for this article besides Ms. McSnutt. There's a universe of possibilities, but what's a reasonable inference? And I think on 12b-6, that that is a reasonable inference that the court has to give on the pleading of the complaint. You're asking us to infer that she told the author that he was removed for sexual harassment because that would be defamatory in and of itself. Yes. And I think that that's clear. Well, the fact that it's coupled with other NAS members who were ejected for sexual harassment, I think it's clear from the positioning. That that's what the statement was about. The removal should convey that NAS members need to be role models not only in what they have achieved but also in setting the highest standards for professional conduct. And I don't think that can be extracted in a defamation for implication claim. I don't think that that can be extracted. Thank you. And we'll give you two minutes for rebuttal. Thank you. May it please the court. My name is Carla Grossenbacher and I represent the National Academy of Sciences and Marsha McNutt. We ask this court to affirm the decisions of the district court dismissing appellant's claims. As the district court concluded, appellant has failed to state a claim. NAS made truthful statements about why it rescinded the appellant's NAS membership. And that truthful statement cannot form the basis for a defamation claim. At no time did NAS or Ms. McNutt assert that appellant had engaged in sexual harassment or otherwise state what Mr. Castillo had done or not done to violate the code of conduct. Indeed, in concluding that he violated the code of conduct, NAS did not have to find that he engaged in sexual harassment. Moreover, as to defamation by implication, which is the pathway for a defendant to be held liable under defamation law for an otherwise truthful statement, it is a rigorous standard as this court has recognized. A statement that merely conveys materially true facts from which a defamatory inference can reasonably be drawn is not enough. There must be affirmative evidence that my clients intended or endorsed a defamatory meaning to any of their statements. There is none in this case. Appellant makes much of the fact that Ms. McNutt was quoted in a Science Insider magazine article. However, appellant concedes in his brief that the quote from McNutt that appears in the article is nothing more than a neutral statement of bland principles. Those are his words. McNutt's comment does not even mention Mr. Castillo. The most favorable reading from the perspective of the plaintiff would be that Ms. McNutt has grouped Mr. Castillo-Butters with the two other people who were removed for sexual harassment because the quote says Nass president Marsha McNutt says that the removals should convey that Nass members need to be role models not only in what they have achieved but also in setting the highest standards for professional conduct. And I guess the strongest argument to be made for the plaintiff is that she has grouped him with the other two where it's known that the other two were removed for sexual harassment. Well, I would say that it's the reporter who grouped them together because if we look at the statement on the website on October 15, there was another person on there that no one is claiming engaged in sexual harassment. So Ms. McNutt, I think, was referring to what had been published on the website the same day as the article, which was, I believe, a total of four people who had been ejected from membership. Is that a factual question, though, that shouldn't survive dismissal if it depends on what she was referring to? I don't think it depends on what she's referring to because I do think it is the reporter who grouped them all together because, again, all that the website says. President Marsha McNutt says the removals, period, should convey that Nass members need to, et cetera, et cetera. So I think that this article is quoting Ms. McNutt as saying that the removals, plural, should convey. And is this a factual question that matters? What removals was she talking about? Was she talking about the ones for sexual harassment, which might group Castillo-Butters with sexual harassment? I don't think so because then it goes back to the quote that Your Honor has pointed to a number of times, which is that may be an inference, but it's different than an affirmative statement by Ms. McNutt showing her intent to endorse the defamatory meaning specifically, which is the rigorous showing that is required under the defamation by implication standard. Let me take you back to the basic question of whether the statements defamatory, the announcements that were made. There's a case called Milkovich versus Lorraine Journal, Supreme Court, 1990. The issue of falsity raises, the issue of falsity relates to the defamatory facts implied by a statement. For instance, the statement, I think Jones lied, may be provable as false on two levels. First, that the speaker really did not think Jones had lied, but said it anyway. And second, that Jones really had not lied. It is, of course, the second level of falsity, which would ordinarily serve as the basis for a defamation action, which in this instance would be that he violated the code of conduct. So his claim is, you're saying I violated the code of conduct, that is false. I didn't do the things that would constitute a violation of the code of conduct. So saying, to skirt the issue and say, well, it's true that that's why he was thrown out, doesn't resolve the matter. Well, we would take the position that it is a verifiably true statement that this is the reason why he was ejected from the membership at NAS. And that if you want to take that true statement and make a defamation, you've got to meet the rigorous standard for defamation by implication. That that's what that standard is there for, if you have an otherwise truthful statement. And they admit it is true that this is the reason why we rescinded his membership. Now, we specifically didn't say what he did or didn't do that violated the code of conduct. And there are a number of things under the code of conduct, as Your Honor pointed out, that don't meet the odious and infamous standard for a defamatory statement. I don't necessarily agree with that. If you're expelled from the professional society, an honorary or honorific professional society, for unknown reasons, it is itself very damaging. Yes, but this court has held that the mere, for example, termination of employment, which could similarly be said to be defamatory because you didn't get fired for no reason, is not enough to constitute defamation. I believe that was the Clampett case. No, but here it said it's not for no reason. It said you were expelled for a code of conduct violation. Correct. So it's not just that you were expelled. You were expelled for a code of conduct violation. Correct, but we would submit that not every violation of the code of conduct is a type of conduct that meets the high standard for what's defamatory. It's got to be something that's more than offensive under the District of Columbia legal standard for defamation. So it may be offensive to say that I wasn't respectful and I wasn't collegial, but I don't think it's defamatory to say that about someone. He was either, let's say, a rapist or not genteel. We're not going to say which. Understood, but we specifically didn't say that he was any of those things, and we absolutely didn't have to make any determination that, for example, he engaged in sexual harassment. We could have read the investigation report that Mr. Castillo submitted to NAS and said, we're not going to get into whether this is sexual harassment or bullying or discrimination. We are simply going to determine that this conduct does not meet our standard as an organization. And then we ejected him from the membership. So we would submit that there was no actual defamation because our statement on the website was true. And Ms. McNutt's statement in the article was a neutral statement that was also a true statement of standards. Well, the statement about it being true, you're saying that it is true that he was ejected for a violation of the Code of Conduct. But I think that the implication of that statement is he violated the Code of Conduct. So that's you saying that he violated the Code of Conduct. And he's saying that that part of it is not true. So I think that that aspect of the argument is a little bit, in my view, kind of difficult. Because as Judge Ginsburg said, what if your Code of Conduct said, or what if you said we're ejecting him because he either was impolite or murdered somebody? I mean, the implication is there that he did something very serious. And he's denying that he violated the Code of Conduct at all. So I think it's hard to say that this is objectively true if you're depending on just saying, well, we ejected him for this reason. Because that reason implies that you found that he violated the Code of Conduct. But I think the more difficult hurdle for the plaintiff is that the legal standard is that it must point him out to be odious. And I don't know that violating Section 4 must point him out to be odious if that can mean that he was not collegial. Yeah. So we would agree with that latter point. We still submit that it is a verifiably true fact that this was the reason. But if that is not... But the reason is that he, in fact, violated it. It's just wordplay if you say it's correct that we say we violated him for a violation. I mean, that statement is he violated the Code of Conduct and so we ejected him. But I think that's when you get to defamation by implication. Agreed. But I think that your argument that this is objectively true has some weaknesses. Understood. Understood. And, again, we would say that a violation of the Code of Conduct when we basically did everything to not say anything about what he did or didn't do, even though the Science Insider article put it out there, that, again, it was not defamation per se or defamation by implication. For these reasons, we would ask that the Court affirm the decisions of the District Court unless there are any other questions for me. Thank you. All right. We'll give you two minutes for rebuttal, Mr. Jones. Thank you, Judge Pan. Just a few things to follow up on. I think the issue, and the Court's seen the issue, the problem that we have with the position that a truthful statement can't be defamatory. And the position is that you have sort of a truthful statement that is bootstrapping a defamatory part of that statement. And that the position is whether or not the Code of Conduct is violated is something that could be provable. And while it's true, that is the statement. That's the extent of the agreement on the truth of the statement. It is true that that statement was made. And NAS didn't need to provide any additional information about the reason for the ejection. But they did, and specifically referred to Section 4 of the Code of Conduct, which has this list of, you know, everything from collegiality to sexual harassment. And so, I think that also is a reasonable inference that NAS intended to convey a message. That Dr. Castillo was being ejected for misconduct. And I think that violation of the Code of Conduct, misconduct, that's not a huge inferential leap. They could have simply announced that he was, that his membership was rescinded. And interestingly enough, I think if they had only announced that his membership was rescinded, I think that that's probably not defamatory. That's a truthful statement, possibly. I think if they said that he had committed sexual harassment, he had violated the Code of Conduct standing alone, I think that's a very clear case. And so, we have, unless there are other questions, we have nothing further to put before the Court. We stand on what's in our briefing. Thank you. Thank you both. Thank you, Judge Pan, Judge Ginsburg, and Judge Henderson, when she hears the recording. Thank you very much.
judges: Henderson; Pan; Ginsburg